# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| VERTEX ENERGY OPERATING, LLC | § § § | |
| *Plaintiff/Counter-Defendant,* | § § | |
| v. | § § | Civil Action No. 4:20-cv-03901 |
| PENTHOL LLC, | § § § | |
| *Defendant/Counter-Plaintiff.* | § | |

## PLAINTIFF/COUNTER DEFENDANT'S PARTIAL MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), Plaintiff/Counter-Defendant Vertex Energy Operating, LLC ("Vertex") files this Partial Motion to Dismiss Defendant/Counter-Plaintiff Penthol LLC's ("Penthol") first, second, and third counterclaims.

## I. INTRODUCTION

This case is about marketing base oils. Consumers use base oils as high-performance engine lubricants. █████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

   ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

1

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ As discussed in Response to Penthol's Motion to Dissolve, two different judges have already agreed with Vertex's interpretation of the Agreement. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

Specifically, Penthol's first counterclaim alleges ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬ violates Section 1 of the Sherman Antitrust Act. To determine whether this claim has any merit, the Court should answer these questions:

1. whether Penthol had pleaded facts that, if true, show that Vertex and Penthol engaged in a conspiracy—that is, a conscious commitment to a common scheme designed to achieve an unlawful objective; and

2. whether Penthol pleaded facts that, if true, show that conspiracy unreasonably restrains trade.

The answer to both questions is no. First, Penthol alleges it is *Vertex's* actions alone that unreasonably restrain trade. But the Fifth Circuit has held "[i]t is axiomatic that unilateral activity by a single firm cannot be reached via [15 U.S.C. § 1]." *Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 286 (5th Cir. 1978). In other words, Penthol's allegations, even if true, do not allege a conspiracy between Vertex and anyone else and thus do not meet the first element of a Section 1 violation.

Second, Penthol "must allege facts that show that the [concerted action] actually harmed competition" in the market. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 376 (5th Cir. 2014). "Speculation about anticompetitive effects is not enough." *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1385 (5th Cir. 1994). But Penthol's assertions about market injury are speculative by its own admission. Penthol only alleges the harm that Vertex's

2

"actions" *could* cause, not the harm that it *has* caused. This is not enough to survive a motion to dismiss.

Separate from the Sherman Act counterclaim, Penthol also alleges Vertex tortiously interfered with Penthol's prospective and existing business relationships or contracts. But Penthol does not allege facts that would meet the elements of these claims. Penthol, instead, simply makes conclusory allegations, which is not enough to survive a motion to dismiss.

For these reasons, this Court should dismiss Penthol's first, second, and third counterclaims.

## II. FACTUAL BACKGROUND

In 2016, Penthol got the chance to bring the Abu Dhabi National Oil Company's Group III Base Oil ("the Product") to the North American market for the first time. Base oils like the Product form the base of high-performance engine lubricants. Because the North American market for this kind of product is difficult to break into and Penthol did not have a presence in North America, it reached out to Vertex for assistance. Vertex had experience marketing and selling products like the Product, and it had a large preexisting customer base. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ But in 2020 Penthol hired a new CEO, Harji Gill ("Gill"), its first non-clerical employee in the United States. Shortly after he joined Penthol, Gill began contacting and meeting with Vertex's customers without its knowledge. When Vertex confronted Gill about these meetings, he eventually admitted he had contacted multiple customers, including to see if they had any complaints about Vertex. ███████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████. Vertex eventually sued Penthol to protect its customer relationships and goodwill—interests that faced irreparable injury because of Penthol's breaches ████████████.

### III. PROCEDURAL BACKGROUND

On October 13, 2020, Plaintiff Vertex Energy Operating LLC ("Vertex") filed its Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction. On November 10, 2020, the 61st Judicial District Court held an evidentiary hearing for the Temporary Injunction. After considering the parties' briefs, a full day of testimony, and the parties' opening and closing statements, the court entered Vertex's proposed Temporary Injunction.

On November 17, 2020, Penthol filed a Notice of Removal removing the case to this Court. On December 7, 2020, Penthol filed four counterclaims against Vertex: (1) Sherman Act, Section 1; (2) Tortious Interference with Prospective Business Relationships; (3) Tortious Interference with Existing Business Relationships or Contracts; and (4) Breach of Contract. On December 10, 2020, Penthol moved to Dissolve the Temporary Injunction. On December 14, 2020, Vertex

moved to remand this case back to the 61st Judicial District Court. The Motion to Dissolve and the Motion to Remand are pending. Now, Vertex files this Motion to Dismiss Penthol's First, Second, and Third Counterclaims.

## IV. LEGAL STANDARD

To survive a motion to dismiss, a party must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Only non-conclusory factual allegations are entitled to the presumption of truth at this stage; conclusory allegations of law, inferences not supported by facts, and formulaic recitations of the elements of a claim do not satisfy the pleading standard under the Federal Rules and will not defeat a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## V. ARGUMENTS AND AUTHORITIES

**A. Penthol fails to state a claim for a violation of Section 1 of the Sherman Act.**

    **1. Section 1 of the Sherman Antitrust Act requires a conspiracy between two or more parties.**

15 U.S.C. § 1, also known as the Sherman Act, prohibits all agreements that restrain trade. *See Ariz. v. Maricopa Cnty. Med. Soc'y,* 457 U.S. 332, 342 (1982). To establish a violation of § 1 of the Sherman Act, Penthol must show that: "(1) [Vertex and Penthol] engaged in a conspiracy, (2) the conspiracy had the effect of restraining trade, and (3) trade was restrained in the relevant market." *Apani Sw., Inc. v. Coca–Cola Enters., Inc.*, 300 F.3d 620, 627 (5th Cir. 2002).

To satisfy the conspiracy element of a Sherman Act claim, Penthol must show "that the defendants engaged in concerted action, defined as having 'a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir. 2008) (quoting *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752,

764, (1984)). The Supreme Court explains "that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made ... [it requires] enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly,* 550 U.S. at 556. A naked allegation of a conspiracy or agreement, without more, is not sufficient to state a claim under Section 1. *Id.*

> **2. Penthol fails to plead facts sufficient to allege Vertex engaged in a conspiracy because Penthol's claim is only based on *Vertex's* unilateral actions.**

To decide whether Penthol's counterclaims can survive a motion to dismiss, the first question is whether Penthol's counterclaim sufficiently alleges that Vertex and Penthol engaged in concerted action—that is, a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co.*, 465 U.S. at 764 (citation and internal quotation marks omitted). "Concerted activity within the scope of § 1 . . . occurs when one business entity takes action at the request of a second business entity." *Ginzburg v. Mem'l Healthcare Sys., Inc.*, 993 F. Supp. 998, 1009 (S.D. Tex. 1997) (citation and internal quotations omitted).

Penthol fails to allege that Vertex engaged in a concerted action with any other entity. To meet this prong, Penthol alleges that ██████████████████████ is the concerted action: "████████████████████████████████████████████████ ██████████" *See* Dkt. 12 ¶ 132. This is striking because Penthol's own allegation suggests it is involved in the very Section 1 violation it complains about. ████████████████████ ████████████████████████████████

Penthol, perhaps recognizing this dilemma, argues that ████████████████ ████████████████████████████████████████ ████████████████████████

6

▮

*See* Dkt. 12 ¶ 133. Penthol also alleges that "Vertex has recently taken [a] position" on ▮ ▮, and that this contractual position is an "unlawful interpretation of the ▮" *Id.* ¶ 134. It is unlawful, according to Penthol, because Vertex's contractual interpretation means "▮ ▮ ▮." *Id.* ¶ 149. So Penthol alleges that the Agreement is the concerted action, but only Vertex's actions were unlawful.

These facts cannot support a claim that Vertex violated 15 U.S.C. § 1 because the alleged "unlawful restraint on trade" Penthol complains about is not a "concert of action between separate business entities," which is "[e]ssential to every § 1 offense." *Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 286 (5th Cir. 1978) ("Essential to every § 1 offense is concert of action between separate business entities.") Instead, Penthol only complains about Vertex's activities. But "[i]t is axiomatic that unilateral activity by a single firm cannot be reached via this section [15 U.S.C. § 1]." *Id.*

So Penthol's allegations, even taken as true, do not demonstrate that Vertex and Penthol adopted "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 375 (5th Cir. 2014). In other words, Penthol's counterclaim does not set forth facts that show a "meeting of the minds" between Vertex and other alleged conspirators. *See Twombly,* 550 U.S. at 557. The Supreme Court instructs that such allegations fall short of the requirements of Rule 8(a)(2). *See id.* Thus, the Court should dismiss Penthol's first counterclaim.

### 3. Penthol also fails to plead facts that demonstrate Vertex's unilateral "actions" unreasonably restrain trade because the alleged market injury is speculative.

Penthol's counterclaim must also allege facts showing that the alleged conspiracy restrains trade in the United States Group III market. *See Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 289 (5th Cir. 1988) (stating that only "unreasonable restraint[s]" are actionable under § 1). Even if Penthol's allegations are true, they fail to show that the concerted action—let alone Vertex's unilateral "actions"—injures competition in the North American Group III market.

This is because Penthol's assertions about market injury are speculative, and "[s]peculation about anticompetitive effects is not enough." *Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1385 (5th Cir. 1994). Penthol, instead, "must allege facts that show that the [concerted action] actually harmed competition" in the market. *Marucci Sports*, 751 F.3d at 376 (5th Cir. 2014). But Penthol's counterclaim makes no such showing.

The crux of Penthol's Sherman Act counterclaim is that "Vertex is attempting to exclude Penthol, a maverick competitor focused on making Group III Products more affordable, from both the Primary Market and the Sub-Market." [1] *See* Dkt. 12, ¶ 135. According to Penthol this will "substantially reduce competition and will result in consumers paying higher prices." *Id*. Penthol's arguments are not only wrong, but they also concede the speculative nature of the claim. For example, Penthol alleges Vertex is only "***attempting*** to exclude Penthol," meaning it has not yet excluded Penthol. *Id*. (emphasis added). Similarly, Penthol argues, "***[i]f allowed to stand***, the Contract will substantially reduce competition and will result in consumers paying higher prices"

---

[1] Penthol also claims that Vertex's actions have harmed Penthol. But these claims are misguided because "antitrust laws are designed to protect competition, not competitors." *Marucci Sports,* 751 F.3d at 376 (affirming the district court granting the motion to dismiss "because the only plausible injury it asserts is its own.")

and having less choice. *Id*. ¶ 136 (emphasis added); *see also* ¶ 148 (Vertex's actions "will cause prices for Group III products to rise and reduce consumer choice and competition.") Finally, Penthol alleges "[t]he sellers of Group III Products in the United States ***would*** have the power, ***if acting collectively***, to increase prices above competitive levels." *Id*. ¶ 146. (emphasis added). In other words, even taking Penthol's allegations as true, ▮▮▮▮▮▮▮ has not *yet* reduced competition or product choice.

At its core, Penthol's allegations do not allege facts that Vertex is successfully excluding Penthol from competition, that its actions have actually caused prices to increase, or that its actions have actually decreased consumer choice. The allegations are simply "[s]peculation about anticompetitive effects" which "is not enough" to survive a motion to dismiss. *Roy B. Taylor Sales,* 28 F.3d at 1385; *see also Taylor v. Christus St. Joseph Health Sys.*, 216 F. App'x 410 (5th Cir. 2007) (holding plaintiff's allegations were not sufficient to state a claim for violating the Sherman Act, with no allegations that there was a rise in the price, decrease in the supply, or a decrease in the quality of the product or service provided); *Location Servs., LLC v. Digital Recognition Network, Inc.*, 2018 WL 5787317, at *2 (N.D. Tex. Nov. 5, 2018) ("the Fifth Circuit narrowly interprets the meaning of antitrust injury, excluding from it the *threat* of decreased competition.") (emphasis added) (citing *Anago, Inc. v. Tecnol Med. Prods., Inc.*, 976 F.2d 248, 249 (5th Cir. 1992)).

**B. Penthol fails to state a claim for tortious interference with prospective business relationships.**

To prevail on a claim for tortious interference with prospective business relations under Texas law, Penthol must establish that: (1) there was a reasonable probability that Penthol would have entered into a business relationship with a third party; (2) Vertex either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or

9

substantially certain to result from the conduct; (3) the Vertex's conduct was independently tortious or unlawful; (4) the interference proximately caused Penthol injury; and (5) Penthol suffered actual damage or loss as a result. *McGowan & Co. v. Bogan*, 93 F. Supp. 3d 624, 655 (S.D. Tex. 2015).

Penthol fails to plead facts that, if true, would meet any of these five elements. First, Penthol does not allege a single fact showing there was a reasonable probability that Penthol would have entered into a business relationship with a third party. Instead, Penthol simply concludes it meets this element: "[a]s it relates to prospective business relationships, there is a reasonable probability that Penthol would have entered into contractual or business relationships with third parties." *See* Dkt. 12, ¶ 161. This is a conclusory allegation of law, which does not satisfy the pleading standard and does not defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Second, Penthol does not allege any facts that Vertex either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to result from the conduct. Penthol, again, simply alleges this conclusory allegation of law. *See* Dkt. 12, ¶ 161. The same is true of the third element—Penthol does not allege facts that would make Vertex's conduct independently tortious or unlawful.

Fourth and finally, Penthol does not allege facts showing the interference proximately caused Penthol injury. Penthol uses just two potential customers as examples: ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10



For these reasons, this Court should also dismiss Penthol's claim of Tortious Interference with Prospective Business Relationships.

## C. Penthol fails to state a claim for tortious interference with existing business relationships or contracts.

To prevail on a claim for tortious interference with an existing business relationship under Texas law, Penthol must prove: (1) Vertex undertook unlawful actions without justification or excuse; (2) with intent to harm; (3) actual damages; and (4) the actions were motivated by malice. *McGowan & Co. v. Bogan*, 93 F. Supp. 3d 624, 655 (S.D. Tex. 2015).

Like its second claim, Penthol fails to plead facts that, if true, would meet any of these elements. Penthol does not allege Vertex undertook unlawful actions without justification or excuse. Penthol also does not allege Vertex had an intent to harm Penthol that malice motivated. And, as explained above, Penthol's examples of ▬▬▬▬▬ do not show it has suffered any actual damages. Penthol, instead, simply concludes it meets each element of this claim. Penthol's conclusory allegations do not satisfy the pleading standard and does not defeat a motion to dismiss. *Iqbal*, 556 U.S. at 678.

11

## VI. CONCLUSION

For these reasons, this Court should dismiss Penthol's Counterclaim alleging that Vertex (1) violated 15 U.S.C. § 1, (2) tortiously interfered with prospective business relationships, and (3) tortiously interfered with existing business relationships or contracts.

Dated: January 7, 2021          Respectfully submitted,

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.**

*/s/ Todd W. Mensing*
Todd Mensing
Federal Bar No. 302944
Texas Bar No. 24013156
Neal Sarkar
Federal Bar No. 2274036
Texas Bar No. 24093106
Jordan Warshauer
Federal Bar No. 2994699
Texas Bar No. 24086613
Harrison Scheer
Federal Bar No. 3556683
Texas Bar No. 24110333
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: 713-655-1101
Facsimile: 713-655-0062
tmensing@azalaw.com
nsarkar@azalaw.com
jwarshauer@azalaw.com
hscheer@azalaw.com

**ATTORNEYS FOR PLAINTIFF VERTEX ENERGY OPERATING, LLC.**

## CERTIFICATE OF SERVICE

    I hereby certify that on January 7, 2021 a true and correct copy of the above and foregoing has been served through CM/ECF and email on all counsel of record.

*/s/ Harrison Scheer*
Harrison Scheer